UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 5G INVESTMENT TRUST, LLC )<br>Plaintiff, )<br>v. )<br>)<br>THE CITY OF NEWBURYPORT, CITY )<br>OF NEWBURYPORT ZONING BOARD )<br>OF APPEALS and EDWARD )<br>RAMSDELL, ROBERT CIAMPITTI, )<br>DUNCAN LABAY, CHARLES )<br>CIOVACCO and LELA LISCHKE )<br>WRIGHT, in their capacities as )<br>members of the City of Newburyport )<br>Zoning Board of Appeals, and THE CITY )<br>OF NEWBURYPORT PLANNING )<br>BOARD and DANIEL BOWIE, )<br>BONNIE SONTAG, BRIAN TIERNEY, )<br>JIM MCCARTHY, HENRY COO, SUE )<br>GROLNIC, DON WALTERS and ANNE )<br>GARDNER, in their capacities as members )<br>of the City of Newburyport Planning Board )<br>Defendants. )<br>_____ ) | Civil Action No. |

## COMPLAINT

## INTRODUCTION

This action arises out of the unlawful denial by the City of Newburyport Zoning Board of

Appeals of a joint application by 5G Investment Trust, LLC ("5G") and Omnipoint

Communications, Inc. ("Omnipoint") (collectively, 5G and Omnipoint are referred to as

"Applicants") for use and dimensional variances and a waiver under the City of Newburyport

Zoning Ordinance (the "Ordinance") to install, operate, and maintain a one hundred ten foot

(110') telecommunications stealth flagpole-style monopole (the "Tower"), together with

equipment cabinets in a fenced compound at the base of the Tower (the "Facility"), to be located

at property leased by 5G at 74 Storey Avenue, Newburyport (the "Property"). The ZBA's denial

186909.2

of the Applicants' application for the variances and waiver violates § 704 of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c).  Accordingly, 5G seeks an injunction from this Court directing the ZBA to grant the Applicants' application for a variance in accordance with 5G's rights under the Federal Telecommunications Act of 1996.

In addition, this matter arises from the City of Newburyport Planning Board's finding that 5G and Omnipoint's application for minor site plan review is incomplete, which finding violates § 704 of the Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c). Accordingly, 5G seeks an injunction from this Court directing the Planning Board to grant the application for minor site plan approval in accordance with 5G's rights under the Federal Telecommunications Act of 1996.

## THE PARTIES

1.      Plaintiff, 5G Investment Trust, LLC, is a Massachusetts limited liability company qualified to do business in Massachusetts with a principal place of business 8 Doaks Lane, Marblehead, Massachusetts.  5G is in the business of constructing and leasing telecommunications towers to carriers licensed by the Federal Communications Commission ("FCC"), such as Omnipoint, its joint applicant for both the ZBA and Planning Board applications, to provide personal wireless services in areas that include the City of Newburyport, Massachusetts.

2.      Defendant, the City of Newburyport ("Newburyport" or the "City") is a duly authorized municipality constituted and existing under the laws of the Commonwealth of Massachusetts.

3.      Defendant, the City of Newburyport Zoning Board of Appeals (the "ZBA"), is a duly authorized unit of the City that has been delegated the authority, among other things, to

grant variances, including use variances, and the requested waiver under the City's Zoning Ordinance.

4.     Defendant, the City of Newburyport Planning Board (the "Planning Board"), is a duly authorized unit of the City that has been delegated the authority, among other things, to grant minor site plan review under the City's Zoning Ordinance.

5.     Defendants Edward Ramsdell, Robert Ciampitti, Duncan LaBay, Charles Ciovacco, and Lela Lischke Wright, served as the ZBA that denied the request for the variances and waiver at issue in this action. Each is named solely in his/her capacity as a ZBA member.

6.     Defendants Daniel Bowie, Bonnie Sontag, Brian Tierney, Jim McCarthy, Henry Coo, Sue Grolnic, Don Walters, and Anne Gardner, served as the Planning Board that rendered the determination that 5G and Omnipoint's application for minor site plan review was incomplete. Each is named solely in his/her capacity as a Planning Board member.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically § 704 of the Federal Telecommunications Act of 1996.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b), since the Defendants each reside in this District and the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### The Personal Communications Service Technology

9.     5G's co-applicant, Omnipoint, is a communications venture committed to providing integrated wireless personal communications services by building a national wireless network using PCS technology. PCS technology is a new generation of wireless service that uses digital transmission to improve the services available to consumers.

10.     Wireless telephone service is important to public safety and convenience. From 1996 to 2006, the number of wireless telephone users has increased more than fivefold -- from 44 million to more than 219 million wireless subscribers. There are now more wireless subscriptions than landline telephone subscriptions in the United States.

11.     For many Americans, cell phones have become an indispensable replacement for traditional landline telephones. Even when they maintain both types of telephone service, Americans are opting increasingly to use their cell phones over their landline telephones. From 1996 to 2004, Americans more than quadrupled their time spent talking on their cell phones, while markedly reducing the number of long-distance and local calls made over conventional landlines.

12.     For Americans living in wireless-only homes and those outside of their homes, cell phones are often their only lifeline in emergencies. Since 1995, the number of 911 calls made by people using wireless phones has more than doubled, to over 50 million a year. Public safety agencies estimate that approximately 30% of the millions of 911 calls they receive daily are placed from cell phones, and the percentage is growing.

13.     Unlike cellular services using analog-based systems, PCS digital technology converts voice or data signals into a stream of digits to allow a single radio channel to carry multiple, simultaneous signal transmissions. This allows Omnipoint to offer services unavailable in analog-based systems, such as secured transmissions and enhanced voice, high-speed data, paging and imaging capabilities as well as voice mail, call forwarding and call waiting.

14.     Mobile telephones using PCS technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure. The antenna feeds the signal to electronic devices housed in a small equipment cabinet, or base station. The base station is

connected by microwave, fiber optic cable, or ordinary telephone wire to the Base Station

Controller, subsequently routing the calls throughout the world.

15.     Because the PCS system has a lower signal and a much higher frequency than

traditional cellular technology, the range between the PCS mobile telephone and the antennas is

limited.

16.     In order to provide continuous service to a PCS telephone user, coverage must

overlap in a grid pattern resembling a honeycomb.  In the event that Omnipoint is unable to

construct a cell site within a specific geographic area, Omnipoint will not be able to provide

service to the consumers within that area.

17.     Omnipoint's engineers use complex computer programs and extensive field

testing to complete a propagation study, which shows where cell sites need to be located in order

to provide service.  The propagation study also takes into account the topography of the land, the

coverage boundaries of neighboring cells and other factors.  In order for the entire system to be

operational, there must be properly placed cell sites installed and functioning so that seamless

coverage can be realized, and only when the entire system is operational will a PCS telephone

user have service and an uninterrupted conversation throughout a given territory.  If there is no

functioning cell site within a given area, there would be no PCS telephone service for customers

within that area, and mobile customers who travel into the area will experience an unacceptable

level of dropped calls.

18.     Based upon Omnipoint's research and analysis, Omnipoint determined that it has

a significant gap in coverage and that it could remedy this significant gap in its PCS coverage

and best provide PCS coverage to the targeted areas of Newburyport, and particularly along

Interstate 95 and State Route 113 in Newburyport, by locating its facility on the Tower to be

constructed by 5G on the Property at a height of one hundred (110) feet.

19.     Omnipoint determined that, because of its location, size and unique topography, the Property provided the optimal site within Newburyport to remedy its coverage gap and to provide coverage consistent with the dictates of its FCC license requirements.

20.     Based upon 5G's analysis and research concerning the needs of other FCC-licensed providers of personal wireless services, 5G determined that such providers also have significant gaps in coverage that could be remedied by locating antennas on 5G's monopole structure on the Property.  This would allow the wireless providers to provide adequate coverage to their targeted areas of Newburyport, and particularly along Interstate 95 and State Route 113 in Newburyport.

21.     Verizon Wireless, a FCC-licensed provider of personal wireless services, provided radio frequency propagation studies to 5G that were included in the applications to the ZBA and Planning Board, demonstrating that it had a significant gap in coverage in this area and that because of its location, size and unique topography, the Property provided the optimal site within Newburyport to remedy Verizon Wireless' coverage gap and to provide coverage consistent with the dictates of its FCC license requirements.

22.     In order to minimize any negative aesthetic impact of its proposed facilities, 5G proposed a stealth monopole at the Property, and Omnipoint determined that it could place its antennas at a height of one hundred (110) feet within the proposed Tower.  Further, the proposed Tower would be designed to accommodate the needs of Verizon Wireless and at least one additional personal wireless service provider.

### Federal Statutory Control Over PCS & Telecommunications Siting

23.     Section 704 of the Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332(c), limits state and local government regulation of the siting of personal wireless services facilities such as the one at issue here.

186909.2                                                 6

24.     The Act provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Act may seek expedited review in the federal courts.  47 U.S.C. § 332(c)(7)(B)(v).

25.     The Act further provides that a state or local government must act on a request for authorization to place, construct, or modify a PCS facility within a reasonable period of time.  47 U.S.C. § 332(c)(7)(B)(ii).

## The Zoning Ordinance

26.     The Property is located within the Business One (B-1) Zoning District as defined under the Ordinance.  Under Section XX-G.1 and Section V-D.4 (Table of Use Regulations) of the Ordinance in effect at the time the application was filed, heard and decided, the use of the Property for a wireless communications facility was not permitted within the B-1 Zoning District.

27.     Pursuant to Section XX-G.5 of the Ordinance, wireless communications facilities are not permitted within "two hundred (200) feet of a residential structure," unless such wireless communications facility is located on "land and/or structures owned by the City of Newburyport".

28.     5G and Omnipoint sought variances from these requirements because no properties within an allowed zoning district within Newburyport were commercially available or reasonably feasible for the location of a wireless communications facility to address the significant gap in co-applicant Omnipoint's coverage network.

29.     Pursuant to Section XX-F of the Ordinance, wireless communications facilities "shall not exceed one hundred fifty (150) feet in height nor be erected nearer to any property line than a distance equal to the vertical height of the support structure… unless it is determined by the board [ZBA] that… a reduction of vertical distance… will not substantially derogate from the

intent or purpose of this section". Because of the narrow width of the Property, the Applicants requested that the ZBA grant a "waiver" from this provision pursuant to Section XX-F of the Ordinance to allow the Tower to be located less than one hundred ten (110) feet from two property lines.

30.     Pursuant to Section X-H.6.A of the Ordinance, the ZBA is authorized "to grant upon appeal or upon petition, a variance, including a use variance, from the terms of this zoning ordinance".

31.     Under Section X-H.6.A of the Ordinance and consistent with M.G.L. ch. 40A, s. 10, the ZBA may grant a variance when it finds that: owing to circumstances relating to the soil conditions, shape or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the Ordinance would involve substantial hardship, financial or otherwise, to the applicant, and that desirable relief may be granted without substantial detriment to the public good, and without nullifying or derogating from the intent or purpose of the Ordinance.

32.     Section X-H.6.C of the Ordinance also requires the ZBA to find that:

a.     "Conditions and circumstances are unique to the applicant's lot, structure or building and do not apply to the neighboring lands, structures, or buildings in the same district";

b.     "Strict application of the provisions of this chapter would deprive the applicant of reasonable use of the lot, structure or building in a manner equivalent to the use permitted to be made by other owners of their neighboring lands, structures or buildings in the same district";

c.     "The unique conditions and circumstances are not the result of actions of the applicant taken subsequent to the adoption of this chapter";

      d.    "Relief, if approved, will not constitute a grant of a special privilege inconsistent with the limitations upon other properties in the district.

33.    Pursuant to Section XV of the Ordinance, the Planning Board is authorized to hear applications for Site Plan Review, including an application for minor site plan review as filed by the Applicants.

34.    Section XV-G of the Ordinance sets forth several criteria for the Planning Board's review and final approval of a site plan application, including *inter alia* (i) community character, (ii) traffic, parking, and public access, (iii) health, (iv) public services and utilities, (v) land use and planning, (vi) open space and environmental protection.

35.    Pursuant to Section XV-I.c "Final action of the planning board shall include one of the following…[a] disapproval of the application for the reasons of an incomplete application".

36.    Under Section XV-J, "[a]ppeal of the planning board decision shall be made directly to a court of competent jurisdiction".

**Applications under the Zoning Ordinance and
Telecommunications Act of 1996**

*The ZBA Application*

37.    On or about July 16, 2007, by a joint application, the Applicants formally applied to the ZBA for use and dimensional variances and the requested waiver pursuant to the Ordinance and the Act.

38.    The Applicants' application to the ZBA met all of the requirements of the Act and the Ordinance for the issuance of the requested relief.  Specifically, the Applicants demonstrated, in the application that:

    a)    a literal enforcement of the use and dimensional provisions of the Ordinance would prevent co-applicant Omnipoint, and other wireless communications

carriers interested in 5G's proposed facility, from eliminating an existing gap in their coverage networks, resulting in a potential loss of subscribers and the inability to compete for subscribers with FCC licensed competitors in the market, contrary to the intent of the Act;

b)    there was no reasonably feasible or commercially available permitted property at which the 5G's co-applicant Omnipoint, or other wireless communications carriers interested in 5G's proposed Facility, could install a wireless communications facility to provide coverage to this significant gap in its network;

c)    5G designed its Facility in a manner that conforms to the existing shape and topography of the Property in a manner which will minimize potential aesthetic impact;

d)    the Property had unique topographical characteristics relative to other properties in its vicinity, such that the location of the proposed Tower is necessary to rectify its coverage gap;

e)    the relief sought by the Applicants could be granted without substantial detriment to the public good and without derogating from the intent or purpose of the Ordinance; and

f)    notwithstanding the Ordinance's use and dimensional restrictions, the ZBA had the authority, pursuant to the Ordinance and the Act, to grant the requested relief.

### *The ZBA's Denial of the Variance Application*

39.    The ZBA held one public hearing on the Applicants' application on August 28, 2007.

40.    At the hearing, the ZBA questioned, *inter alia*:

a)      whether co-applicant Omnipoint, or other wireless communications carriers interested in 5G's proposed facility, had a significant gap in coverage in their networks; and

b)      whether there were other alternative properties in the City of Newburyport from which the coverage gap could be rectified.

41.     Co-applicant Omnipoint introduced evidence, including radio frequency coverage maps, which demonstrated that it had a significant gap in coverage in this area.

42.     Co-applicant Omnipoint introduced further evidence that the significant gap in coverage was located within the City of Newburyport and included Interstate 95, utilized by approximately 52,000 cars per day, and State Route 113, which is used by approximately 18,000 cars per day.  No expert evidence to the contrary was introduced at the hearing or submitted to the record.

43.     Although not a co-applicant, Verizon Wireless provided to 5G radio frequency coverage maps which demonstrated that it too had a significant gap in coverage in this area. Such radio frequency coverage maps were included in the written application and supporting materials filed with the ZBA.  At the public hearing, the ZBA was informed of Verizon Wireless' interest in 5G's proposed Facility on the Property.  Verizon Wireless' radio frequency coverage maps were submitted at the public hearing.

44.     The Applicants introduced testimony concerning their respective searches for alternative sites.  The Applicants demonstrated that the alternative sites they found, which included properties located within the allowed zoning districts and municipally-owned properties, were not available for lease or were otherwise not feasible alternatives to the Property.

45.    The Applicants introduced testimony concerning the need for a facility within the immediate vicinity of the Property in order to allow Omnipoint's proposed coverage from the Property to connect with its existing sites for the provision of seamless coverage along Interstate 95, Route 113 and the surrounding area.

46.    The Applicants introduced testimony concerning the structural design of the proposed Tower and the use of internally mounted antennas to minimize the profile of the Tower.

47.    In the application and at the hearing, Omnipoint presented evidence that pursuant to the Ordinance and the Act, the ZBA had the authority to grant the requested relief.

48.    The ZBA requested no additional information regarding the proposed facility, Omnipoint's coverage gap, Verizon Wireless' coverage gap, or the lack of feasible alternative sites.

49.    The ZBA closed the public hearing and voted 5-0 to deny the Application.

50.    The ZBA's decisions were filed with the City Clerk's office on September 5, 2007. A true and accurate copy of the ZBA's decisions are attached hereto as Exhibit A.

### *The Planning Board Application*

51.    On or about August 15, 2007, by a joint application, the Applicants formally applied to the Planning Board for minor site plan review pursuant to the Ordinance and the Act.

52.    The Applicants' application to the Planning Board met all of the requirements of the Act and the Ordinance for the issuance of the requested relief. Specifically, the Applicants demonstrated in the application that:

a)    denial of the requested minor site plan review under the Ordinance would prevent Omnipoint and other wireless communications carriers interested in 5G's proposed facility from eliminating an existing gap in their coverage networks,

resulting in a potential loss of subscribers and the inability to compete for subscribers with FCC licensed competitors in the market, contrary to the intent of the Act;

b)      there is no reasonably feasible or commercially available, permitted property at which co-applicant Omnipoint can install a wireless communications facility to provide coverage to this significant gap in its network;

c)      the Property has unique topographical characteristics relative to other properties in its vicinity, such that the location of the proposed monopole is necessary to rectify Omnipoint's coverage gap;

d)      5G designed its Facility in a manner that conforms to the existing shape and topography of the Property in a manner which will, to the extent feasible, preserve community character without adverse impact on (i) traffic, parking, and public access, (ii) health, (iii) public services and utilities, (iv) land use and planning, and (v) open space and environmental protection; and

e)      the Applicants are entitled to approval of the requested relief pursuant to the Ordinance.

### *The Planning Board's Determination that the Application was "Incomplete"*

53.     As required by the Ordinance, on September 5, 2007, the Planning Board held a hearing to determine the "completeness" of the Applicants' minor site plan review application.

54.     Upon the opening of the public meeting on the Applicants' application, the Planning Board Chairman opined that the Planning Board could not find the application "complete" because the ZBA had already denied the application for the variances necessary to permit the Facility.

55.     The Planning Board Chairman further stated that, because site plan review is to put "reasonable conditions upon an allowed use," the Planning Board could not render a decision on the application because the ZBA had already denied the use.  Except for opining that an additional application to amend the existing site plan for the current use of the Property may be necessary in addition to the requested minor site plan review, the Planning Board did not discuss what information would be required beyond what was already submitted by the Applicants.

56.     The Applicants responded that (i) the application for minor site plan review was a separate application and hearing process for a different form of relief and (ii) that the Planning Board had the authority and duty to hear the application.

57.     The Applicants further responded that the Planning Board could not indefinitely delay a substantive hearing on the merits of the application by finding the application incomplete, not because of a missing submittal or lack of information, but because of the ZBA denial.  In effect, the Planning Board made a substantive decision, not that the application was incomplete, but rather, that it was unwilling or unable to grant the requested relief.

58.     Even so, the Board voted to find the application incomplete and declined to schedule the application for further hearings.

59.     The Planning Board filed its written determination with the City Clerk's office on September 13, 2007.  A true and accurate copy of the Planning Board's determination is attached hereto as Exhibit B.

## COUNT I - TELECOMMUNICATIONS ACT OF 1996
### (Effective Prohibition - ZBA)

60.     Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the

United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

62.     The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or Ordinance affecting such facilities to the extent that such laws, ordinances, and Ordinance conflict with the Act.

63.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof ...(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services".

64.     The Applicants' application for use and dimensional variances and the requested waiver constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

65.     As a provider of infrastructure services to Omnipoint and other wireless communications carriers, including Verizon Wireless, 5G's prosecution of an application to construct the proposed Facility constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

66.     The Applicants investigated alternative sites in and around the areas of Newburyport within which Omnipoint's engineers and Verizon Wireless' engineers determined that a coverage gap exists and that the proposed facility must be located at the Property to fill their gap in service coverage.

67.     No existing structure or property within the extremely limited zoning districts within which wireless communications facilities are permitted to be located is reasonably feasible to remedy the gap in wireless coverage.

68.     No existing structure or other property in or near the vicinity of the proposed facility is reasonably feasible and/or commercially available to remedy the gap in wireless coverage.

69.     The ZBA's denial of the zoning relief sought by the Applicants effectively prohibits co-applicant Omnipoint and other wireless communications carriers interested in 5G's proposed Facility from providing coverage to their current or potential subscribers.

70.     The Applicants established that the denial of the request use and dimensional variances and waiver to permit the installation, operation, and maintenance of the proposed Facility would result in a significant gap in the provision of wireless communications services to Omnipoint and Verizon Wireless customers and that there are no alternative sites within the affected area of Newburyport on or from which these significant gaps in coverage may be addressed.

71.     Further, in light of the narrow geographic area within which a facility must be located to allow wireless communications carriers to provide adequate coverage to the significant gaps within their networks, the ZBA's statements that a facility does not belong within the general area renders any further applications for a site to cover this significant gap fruitless.

72.     Consequently, the ZBA's denial of the requested use and dimensional variances and waiver violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services.  47 U.S.C. § 332(c)(7)(B)(i)(II).

73.     Accordingly, the ZBA's actions are in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.  Further,

this Court should exercise its power to issue an order commanding the ZBA to grant the variances and waiver for which the Applicants applied.

## COUNT II - TELECOMMUNICATIONS ACT OF 1996
### (Substantial Evidence - ZBA)

74.     Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 above as if fully set forth herein.

75.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

76.     The Applicants fulfilled all of the criteria required by the Act and Ordinance in order to receive the use and dimensional variances and waiver for which they applied.

77.     Defendants have failed to meet their burden of producing substantial evidence in a written record supporting the ZBA's denial of the Applicants' application.

78.     In denying the request for relief, the ZBA failed to consider whether Omnipoint's and Verizon Wireless' need for this site as the only means to close significant gaps in their coverage, constituted a unique circumstance requiring a variance.

79.     The ZBA ignored the uncontroverted scientific evidence submitted by Omnipoint and Verizon Wireless to substantiate the existence of the significant gaps in their coverage networks.

80.     Accordingly, the ZBA's decision is not "supported by substantial evidence contained in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii).

81.     Consequently, the ZBA's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis. Further,

this Court should exercise its power to issue an order commanding the ZBA to grant the variances and waiver for which the Applicants applied.

## COUNT III - TELECOMMUNICATIONS ACT OF 1996
### (Effective Prohibition – Planning Board)

82.     Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth herein.

83.     Article VI, Clause 2, of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

84.     The Act governs the regulation of the placement, construction, and modification of personal wireless service facilities and, under the Supremacy Clause, preempts state laws and municipal ordinances or Ordinance affecting such facilities to the extent that such laws, ordinances, and Ordinance conflict with the Act.

85.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i), the "regulation of the placement, construction and modification of personal wireless service facilities by any State or local government or instrumentality thereof ...(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services".

86.     The Applicants' application for minor site plan review constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

87.     As a provider of infrastructure services to Omnipoint and other wireless communications carriers, including Verizon Wireless, 5G's prosecution of an application to

construct the proposed Facility constitutes a request to provide "personal wireless services" within the meaning of the Act, and, as such, is entitled to the protection of the Act.

88.     The Applicants investigated alternative sites in and around the areas of Newburyport within which Omnipoint's engineers and Verizon Wireless' engineers determined that a coverage gap exists and that the proposed facility must be located at the Property to fill the gap in service coverage.

89.     No existing structure or property within the extremely limited zoning districts within which wireless communications facilities are permitted to be located is reasonably feasible to remedy the gap in wireless coverage.

90.     No existing structure or other property in or near the vicinity of the proposed facility is reasonably feasible and/or commercially available to remedy the gap in wireless coverage.

91.     The Planning Board's determination that (i) the application filed by the Applicants was incomplete because of the ZBA's failure to grant a use variance and (ii) it would consider the site plan review application incomplete until the plans "include an allowed use" effectively prohibits co-applicant Omnipoint and other wireless communications carriers interested in 5G's proposed Facility from providing coverage to their current or potential subscribers.

92.     The Applicants established that the denial and continued finding  by the Planning Board that their application for minor site plan review was "incomplete" would result in the significant gap in the provision of wireless communications services to Omnipoint and Verizon Wireless customers and that there are no alternative sites within the affected area of Newburyport on or from which these significant gaps in coverage may be addressed.

93.     In light of the narrow geographic area within which a facility must be located to allow all the wireless communications carriers interested in 5G's proposed Facility to provide

adequate coverage to their respective significant gaps within their networks, the determination by the Planning Board renders further applications for a site to provide coverage to this significant gap fruitless.

94.     Further, given the Board's statement that Board's determination that an application for a wireless communications facility outside of the allowed zoning districts will always be "incomplete" unless the ZBA has already allowed the use, an application to the Planning Board to modify the existing site plan for the Property would also be fruitless, as it would suffer from the same "deficiency" as the present application.  Accordingly, by its own determination, the Planning Board would consider further application incomplete and refuse to schedule a hearing on the merits of any such application.

95.     Consequently, the Planning Board's determination that 5G and Omnipoint's application for minor site plan review was incomplete violated the Act's requirement that state or local governments not prohibit or effectively prohibit the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(II).

96.     Accordingly, the Planning Board's actions are in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Planning Board to grant the minor site plan review for which the Applicants applied.

### COUNT IV - TELECOMMUNICATIONS ACT OF 1996
### (Substantial Evidence – Planning Board)

97.     Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 96 above as if fully set forth herein.

98.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii): "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal

wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

99.     The Applicants fulfilled all of the criteria required by the Act and Ordinance in order to receive the minor site plan review approval for which they applied.

100.    Section XV *et seq.* of the Ordinance sets forth no requirement that an application for minor site plan review have already received approval from another municipal board or commission to permit the proposed use.

101.    Further, inconsistent with the Planning Board's determination that the plan would remain "incomplete until the plans include an allowed use", at the public meeting, the Planning Board indicated that if the Applicants' application had still been pending before the ZBA, it would not have considered the application incomplete for the failure to include an allowed use.

102.    Accordingly, the Planning Board has failed to meet its burden of producing substantial evidence in a written record supporting the Planning Board's determination that the application at issue was incomplete.

103.    Even more, the purported determination that the application is incomplete is in effect a substantive determination that the Planning Board could not, or would not, grant the requested relief because in its opinion, the use was not permitted.

104.    The Planning Board's determination is a final action subject to judicial review pursuant to Section XV-J of the Ordinance.

105.    The Planning Board also ignored the uncontroverted scientific evidence submitted by Omnipoint and Verizon Wireless to substantiate the existence of a significant gap in coverage, including radio frequency coverage maps and that locating a facility on 5G's proposed Tower was necessary to address such gaps.

106.    Accordingly, the Planning Board's decision is not "supported by substantial evidence contained in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii).

107.    Consequently, the Planning Board's action is in violation of, and preempted by, the Act and the Supremacy Clause, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Planning Board to grant the minor site plan review for which the Applicants applied.

### COUNT V - TELECOMMUNICATIONS ACT OF 1996
### (Unreasonable Delay – Planning Board)

108.    Omnipoint hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 above as if fully set forth herein.

109.    Pursuant to 47 U.S.C. § 332(c)(7)(B)(ii): "[a]ny decision by a State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

110.    By misconstruing the effect of the ZBA's decision  and refusing to consider the minor site plan review application complete unless and until "the plans include an allowed use", the Planning Board's actions have intentionally delayed and will continue to intentionally delay action on the Application until the claims made herein against the ZBA are resolved.  Under the Planning Board's determination, only then could the Applicants be heard on their request for minor site plan review.

111.    The Planning Board's determination is contrary to the Act's requirement that a "State or local government or instrumentality thereof *shall act* on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time". (Emphasis added).  Accordingly, based upon the reasons given the Planning Board's

determination, the Planning Board has failed to act, and is continuing to fail to act, on the Applicants' request within a reasonable period of time in violation of 47 U.S.C. § 332(c)(7)(B)(ii).

112.   Consequently, the Planning Board's determination that the minor site plan review application is incomplete is in violation of, and preempted by, the Act and the Supremacy Clause and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Planning Board to grant the minor site plan review approval.

**WHEREFORE**, Omnipoint respectfully requests the following relief against the defendants:

1.   An expedited review of the matters set forth in this Complaint;

2.   An injunction mandating that the ZBA grant approval of the use and dimensional variances and waiver for which 5G and Omnipoint applied;

3.   An injunction directing the City, through its officers and agents, to issue all ancillary permits, including, without limitation, the use and dimensional variances and waiver for which 5G and Omnipoint applied, as well as a building permit for construction of the Tower and all accompanying equipment sought in the use and dimensional variances and waiver application that is the subject of this action;

4.   An injunction mandating that the Planning Board grant approval of the minor site plan review for which 5G and Omnipoint applied;

5.   An injunction directing the City, through its officers and agents, to issue all ancillary permits, including, without limitation, the minor site plan review for which 5G and Omnipoint applied, as well as a building permit for construction of the Tower and all

accompanying equipment sought in the minor site plan review application that is the subject of this action;

      6.     A judgment that the Defendants' actions violated the Act and are therefore void and invalid;

      7.     An award of 5G's costs of suit herein, including reasonable attorneys' fees; and

      8.     Such other and further relief as the Court may deem just and proper.


                   **5G INVESTMENT TRUST, LLC,**


                   By its attorneys,


                   William A. Worth, BBO # 544086
                   Brian S. Grossman, BBO #641159
                   PRINCE, LOBEL, GLOVSKY & TYE LLP
                   100 Cambridge Street, Suite 2200
                   Boston, MA 02114
                   Telephone:  (617) 456-8000
                   Fax:  (617) 456-8100

Dated: October 5, 2007

# EXHIBIT A

## City of Newburyport Zoning Board of Appeals
### Record of Proceedings and Decision for a Dimensional Variance

An application for a:    Dimensional Variance

Was filed by:   5 G Investment Trust and Omnipoint Communications

8 Doaks Lane

Marblehead                         MA        01945

2007 SEP -5 P

For the property owned by:    74 Storey LLC

The application was filed with the City Clerk on:        7/16/2007        under the Newburyport

Zoning Ordinance Section X-H-3 Powers of the Board and Sections:
XX.G.1 and V.D

The application is for the premises at:        74      Storey Avenue

in the   B1            Zoning District, as indicated on the Newburyport Assessors

Maps as Map and Parcel Numbers:        109-38

which is recorded in the Essex Registry of Deeds as Book and Page Numbers:

23733-354                   The Newspaper notices for the public hearing were

posted on:      8/6/2007    and    8/13/2007

A public hearing was held for this petition on:        8/28/2007      at 7:15 p.m., at which

time the Zoning Board of Appeals voted to DENY the petition for:

*permit the installation, operation, and maintenance of a wireless communications facility including without limitation, a 110' flagpole-style monopole, antennas, coaxial cables, and radio communications equipment to be located within 152' of a residential dwelling*

After the close of the hearing, upon the motion made by Member:        Duncan LaBay

and duly seconded by Member:    Charles Ciovacco        to approve the petition.

The following members present and voting, and voting as follows with respect to the petition for a Dimensional Variance.

| Edward Ramsdell | No | Charles Ciovacco | No |
| Rob Ciampitti | No | William Ladas, Associate | Absent |
| Duncan LaBay | No | Jamie Pennington, Associate | Not Voting |
| Lela Wright | No | | |

The motion having not recieved the neccessary two-thrids super majority vote or all the members of the ZBA, in accordance with M.G.L. c.40A, s.11, as adopted, the petition for the Dimensional Variance was therefore DENIED.

This decision was filed with the Newburyport City Clerk on:        9/5/2007      and sent

registered mail to the applicant, to the Parties in Interest, and the abutting Municipalities.

Undersigned _____chair_____ of the Newburyport Zoning Board of Appeals.

_____                    Date:        9/5/2007

Page 1 of 3                                            Case #   2007    058

## City of Newburyport Zoning Board of Appeals
### Record of Proceedings and Decision for a Dimensional Variance

#### Notification of Decision

Applicant:   5 G Investment Trust and Omnipoint Communications

Property:   74   Storey Avenue

This letter confirms that the Zoning Board of Appeals decision to DENY the petition for a Dimensional Variance for the above property. The petition was for the following:

*permit the installation, operation, and maintenance of a wireless communications facility including without limitation, a 110' flagpole-style monopole, antennas, coaxial cables, and radio communications equipment to be located within 152' of a residential dwelling*

In accordance with the above, this letter will serve as a formal notification of the foregoing action of the Zoning Board of Appeals for this property. A copy of this letter, the record of the proceedings, findings, conditions and documents submitted with the application are on file at the City Clerk's office. This decision, record of proceeding, findings and conditions have been forwarded to the applicant. Appeals of the decision shall be made pursuant to M.G. L.'s Chapter 40A, Section 17, and filed within (20) twenty days after the date of filing with the City Clerk. This decision was filed with the Newburyport City Clerk on:

<u>9/5/2007</u>

Undersigned   *Chair*                    Newburyport Zoning Board of Appeals

Date:   <u>9/5/2007</u>

Page 2 of 3

Case #   2007   058

## City of Newburyport Zoning Board of Appeals
### Record of Proceedings and Decision for a Dimensional Variance

Applicant:    5 G Investment Trust and Omnipoint Communications

Property:    74    Storey Avenue

2007 SEP -5  P 2 :5

### Findings

After the Public Hearing in accordance with the criteria set forth in the City of Newburyport Zoning Ordinance Section X-H-6 Variance, the Zoning Board of Appeals finds the following:

1. Circumstances ARE NOT related to the soil conditions, shape, topography of such land or structures and especially affecting the land or strucutres.

2. There IS NOT a substantial hardship, financial or otherwise, to the petitioner or appellant, which results from the literal enforcement of the applicable zoning restrictions with respect to the land or building for which the dimensional variance is sought.

3. Relief, if granted WILL NOT be desirable and without substantial detriment to the public good.

4. Conditions and circumstantces ARE NOT unique to applicant's lot, structure or building and DO apply to the neighboring lands, structures, or buildings in the same district.

5. Strict application of the Ordinace WOULD NOT deprive the applicant of reasonable use of the lot, structure or building in a manner equivalent to the use permitted to be made by other owners of their neighboring lands, structures or buildings in the same district.

6. The unique conditions and circumstances ARE the result of actions of the applicant taken subsequent to the adoption of the Ordinance.

7. Desirable relief, if granted, will NOT BE WITHOUT nullifying or substantially derogating from the intent or purpose of this ordinace.

8. Relief, if approved, WILL constitute a grant of special privilege inconsistent with the limitations upon other properties in the District.

Case #  2007    058

## City of Newburyport Zoning Board of Appeals
### Record of Proceedings and Decision for a Use Variance

An application for a Use Variance

Was filed by:   5 G Investment Trust and Omnipoint Communications
     8 Doaks Lane
     Marblehead      MA   01945

For property owned by:  74 Storey LLC

The application was filed with the City Clerk on:   <u>7/16/2007</u>   under the Newburyport
Zoning Ordinance Section X-H-3 Powers of the Board and Sections:
XX.G.1 and V.D

The application is for the premises at:   **74**   **Storey Avenue**

in the  B1     Zoning District, as indicated on the Newburyport Assessors

maps as map and parcel numbers:     109-38

which is recorded in the Essex Registry of Deeds as Book and Page Numbers:

23733-354       The Newspaper notices for the public hearing were

posted on:  8/6/2007  and  8/13/2007

A public hearing was held for this petition on:   <u>8/28/2007</u>  at 7:15 p.m., at which

time the Zoning Board of Appeals voted to DENY the petition for the following request:

*permit the installation, operation, and maintenance of a wireless communications facility including without limitation, a 110' flagpole-style monopole, antennas, coaxial cables, and radio communications equipment*

After the close of the hearing, upon the motion made by Member:   Duncan LaBay

and duly seconded by Member:  Charles Ciovacco    to approve the petition.

The following members present and voting, and voting as follows with respect to the petition for a Use Variance.

| | | | |
|---|---|---|---|
| Edward Ramsdell | <u>No</u> | Charles Ciovacco | <u>No</u> |
| Rob Ciampitti | <u>No</u> | William Ladas, Associate | Absent |
| Duncan LaBay | <u>No</u> | Jamie Pennington, Associate | Not Voting |
| Lela Wright | <u>No</u> | | |

The motion having not received the necessary two-thirds super majority vote or all the members of the ZBA, in accordance with M.G.L. c.40A, s.11, as adopted, the petition for the Use Variance was therefore DENIED.

This decision was filed with the Newburyport City Clerk on:   9/5/2007  and sent

certified mail to the applicant, to the Parties in Interest, and the abutting Municipalities.

Undersigned _____chair_____ of the Newburyport Zoning Board of Appeals.

_____ Date:  9/5/2007

Page 1 of 3             Case #   2007    059

**City of Newburyport Zoning Board of Appeals**
**Record of Proceedings and Decision for a Use Variance**

**Notification of Decision**

Applicant:   5 G Investment Trust and Omnipoint Communications

Property:   74      Storey Avenue

This letter confirms that the Zoning Board of Appeals decision to DENY the petition for a Use Variance for the above property. The petition was for the following:

*permit the installation, operation, and maintenance of a wireless communications facility including without limitation, a 110' flagpole-style monopole, antennas, coaxial cables, and radio communications equipment*

In accordance with the above, this letter will serve as a formal notification of the foregoing action of the Zoning Board of Appeals for this property. A copy of this letter, the record of the proceedings, findings, conditions and documents submitted with the application are on file at the City Clerk's office. This decision, record of proceeding, findings and conditions have been forwarded to the applicant. Appeals of the decision shall be made pursuant to M.G. L.'s Chapter 40A, Section 17, and filed within (20) twenty days after the date of filing with the City Clerk. This decision was filed with the Newburyport City Clerk on:

<u>9/5/2007</u>

Undersigned   _Chair_                    Newburyport Zoning Board of Appeals

                                                    Date:      <u>9/5/2007</u>

Page 2 of 3

Case #   2007      059

## City of Newburyport Zoning Board of Appeals
### Record of Proceedings and Decision for a Use Variance

Applicant:   5 G Investment Trust and Omnipoint Communications
Property:   74   Storey Avenue

2007 SEP -5 P 2:14

### Findings

After the Public Hearing in accordance with the criteria setforth in the City of Newburyport Zoning Ordinance Section X-H-6 Variances, the Zoning Board of Appeals finds the following:

1. Circumstances ARE NOT related to the soil conditions, shape, topography of such land or structures and especially affecting the land or strucutres.

2. There IS NOT a substantial hardship, financial or otherwise, to the petitioner or appellant, which results from the literal enforcement of the applicable zoning restrictions with respect to the land or building for which the dimensional variance is sought.

3. Relief, if granted WILL NOT be desirable and without substantial detriment to the public good.

4. Conditions and circumstantces ARE NOT unique to applicant's lot, structure or building and DO apply to the neighboring lands, structures, or buildings in the same district.

5. Strict application of the Ordinace WOULD NOT deprive the applicant of reasonable use of the lot, structure or building in a manner equivalent to the use permitted to be made by other owners of their neighboring lands, structures or buildings in the same district.

6. The unique conditions and circumstances ARE the result of actions of the applicant taken subsequent to the adoption of the Ordinance.

7. Desirable relief, if granted, will NOT BE WITHOUT nullifying or substantially derogating from the intent or purpose of this ordinace.

8. Relief, if approved, WILL constitute a grant of special privilege inconsistent with the limitations upon other properties in the District.

Case # 2007    059

# EXHIBIT B



CITY OF NEWBURYPORT
PLANNING BOARD
60 PLEASANT STREET • P.O. BOX 550
NEWBURYPORT, MA 01950
(978) 465-4400 • (978) 465-4452 (FAX)

CITY CLERK'S OFFICE
NEWBURYPORT, MA

2007 SEP 13  A 10: 17

September 10, 2007

Brian S. Grossman, Esq.
Prince, Lobel, Glovsky & Tye LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114

Re:     5G Investment Trust, LLC and Omnipoint Communications, Inc.
        Application for Site Plan Review

Dear Mr. Grossman,

Thank you for your recent application to the Newburyport Planning Board for Minor Site Plan Review Approval for a proposed wireless communications facility at 74 Storey Avenue.

The Board cannot commence formal review of the application until it is determined complete. Regrettably, the Planning Board deemed the Minor Site Plan Review Application for 74 Storey Avenue incomplete at its regularly scheduled meeting on September 5, 2007.

The Board found the following deficiencies in the submittal:

   ▪  Wireless communication facilities are welcomed throughout the City of Newburyport. Facilities using stealth technology are allowed as-of-right and facilities such as monopoles are allowed by special permit issued by the Zoning Board of Appeals. The Newburyport Zoning Ordinance, Section XX-G, does however direct the location of new personal wireless communication facilities that do not employ stealth technology to industrially zoned districts.

      This application proposes installation of the facility within a B-1 district, which is expressly prohibited unless and until the Zoning Board of Appeals grants a use variance. Yet the Zoning Board voted to deny this very application, in addition to a dimensional variance request, at a public hearing held on August 28, 2007.

      The Planning Board will consider the site plan review application incomplete until the plans include an allowed use.

   ▪  The property is subject to an existing Site Plan Approval and Conditions, dated January 2005; thus, an application for modification of the previous approval is required.

   ▪  A registered landscape architect must prepare a planting plan pursuant to Section XV-E.a.4.

Again, the Planning Board is unable to take further action on 5G Investment and Omnipoint's application at this time; however, the Board will review a completed application once the above-listed submittals are available.

Please do not hesitate to contact the Planning Office with any questions regarding this correspondence.

Sincerely,

Daniel Bowie
Chair